UNITED STATES, Appellee

v

RONALD E. DALE, Lieutenant Colonel, U. S. Army, Appellant

21 USCMA 307, 45 CMR 81

No. 24,238

April 14, 1972

Scott E. Jarvis, Esquire, argued the cause for Appellant, Accused. With him on the brief were Captain Peter J. Horner, Jr., and Captain Norman L. Blumenfeld.

Captain Merle F. Wilberding argued the cause for Appellee, United States. With him on the brief were Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, and Captain David E. Wilson.

## Opinion of the Court

DARDEN, Chief Judge:

Contrary to his plea, Lieutenant Colonel Dale was convicted of four separate charges alleging violations of the Uniform Code of Military Justice. He now has a sentence of dismissal from the service, forfeiture of $100 per month for twelve months, and confinement at hard labor for twelve months. This Court granted review of the case to consider an issue that concerns two of the four charges. Both charges involve a claim for travel allowances for his wife and two daughters in the amount of $213.33. In submitting the claim, the appellant indicated that his wife and two children had accompanied him from Fort Wolters, Texas, to Fort Leavenworth, Kansas, during the period July 21, 1968, to August 8, 1968. Lieutenant Colonel Dale received from the Government $184.32 after deduction of taxes.

Specification 1 of Charge III alleges that the appellant prepared a false claim against the Government for $213.33 as travel and dislocation allowance for his wife and two daughters. Specification 2 of this same Charge avers that he presented the claim in the above

amount for payment. The single specification under Charge IV alleges that he stole the $213.33 from the United States Government. The precise question to be decided is whether the evidence is legally sufficient to support the findings of guilty as to the entire $213.33 set out in each charge and its specifications or whether the findings should be reduced by the amount attributable to the travel of the two daughters.

The record shows that the appellant and his family lived together in Mineral Wells, Texas, until the end of December 1967. During that time the appellant was stationed at Fort Wolters. In late December, Mrs. Dale left with her two daughters and returned to Lansing, Michigan, where she had lived previously. In mid-January 1968, the Dale home in Mineral Wells was offered for sale and sold before the end of the month. In this same month Mrs. Dale filed suit for divorce in Lansing. In February she received temporary custody of the children.

By orders dated February 6, 1968, the appellant was transferred from Fort Wolters, Texas, and assigned as a

student to the Command and General Staff College, Fort Leavenworth, Kansas, with a reporting date of August 12, 1968. As a consequence, on February 19 he wrote the family housing officer at Fort Leavenworth, requesting information on his eligibility for and the availability of on-post, two-bedroom, substandard housing. He indicated that he did not intend to have his family accompany him to Kansas in August, but did expect them to be with him later during "part of the school year."

In the summer of 1968, Mrs. Dale sent the two children to Mineral Wells for a visit with their father. When the appellant signed out and departed Fort Wolters in July 1968 the two girls accompanied him. At Fort Leavenworth he signed for quarters but was informed that the delivery of his furniture would be delayed. After arranging for another delivery date, he and the girls then left on a trip to visit friends that carried them through several states. When he returned on August 8, 1968, he began the processing required of newly arrived officers. He signed the controversial travel voucher at that time. The following day he again left Fort Leavenworth and drove the girls to Michigan, where he talked to his wife about returning to Kansas with him. She refused. When he left, the girls remained with their mother. Mrs. Dale indicated, however, that until their divorce became final in November 1968, she had considered reconciliation · and at one point had decided to return. She had talked with her husband about a reconciliation as late as October 1968.

The appellant testified that he had no intention of defrauding the Government because he fully expected his wife to join him. He also testified that a finance clerk at Fort Wolters had indicated he was entitled to travel pay for his girls even if his wife did not then accompany them.

The elements of the claim offenses under Charge III are that the appellant made and presented the travel voucher for approval or payment, that it was false or fraudulent, and that he acted knowing it to be so. For the larceny under Charge IV, the elements are that he wrongfully obtained money of the United States Government with the intent permanently to appropriate it to his own use.

Under the standard by which this Court measures the sufficiency of evidence to sustain a finding of guilty, there must be "some competent evidence [in the record] from which the members of the court-martial were entitled to find beyond a reasonable doubt, the existence of every element of the offense charged." United States v Papenheim, 19 USCMA 203, 205, 41 CMR 203 (1970).

Appellate Government counsel argue that the children of the appellant accompanied him from Texas to Kansas in the context of a visit, without his intending that they would establish a bona fide residence in Kansas. They consider the claim false because the form is worded in such a way that the applicant attests that the listed dependents performed the travel as claimed with the intent to establish a bona fide residence. As a result of Lieutenant Colonel Dale's many permanent changes of station during his service, the Government imputes to him a knowledge of the content of the particular form he signed and submitted. His hopes for reconciliation with his spouse are not the equivalent of an intent to establish a bona fide residence for the children, according to the Government. Lieutenant Colonel Dale's knowledge that the children were to return to Michigan to be with their mother for the beginning of school in Lansing supports, for the Government, a reasonable inference of actual knowledge of falsity. Appellate counsel for the Government find evidence of the requisite criminal intent on the larceny charge in the appellant's endorsement of the check received in payment of the claim.

During oral argument the Government appellate counsel attached significance to Lieutenant Colonel Dale's having listed the last family address in

Mineral Wells as the place of departure for the travel to Fort Leavenworth and to his having shown the date as July 21, 1968. Although the former residence at Mineral Wells had been sold several months before July, we consider the use of that address for this purpose as not necessarily evidencing fraudulent intent, since the appellant hardly could have used any other address in Mineral Wells if his domestic problems had ended and his family had actually joined him for permanent residence at Fort Leavenworth.

No doubt exists that Lieutenant Colonel Dale received the amount he claimed for the travel of his wife and daughters (with appropriate tax deduction). And it is clear that neither Mrs. Dale nor the daughters occupied quarters at Fort Leavenworth.

As the Government contends, entitlement to reimbursement for dependents' travel is limited by law and regulation. The claim form the appellant used in this instance attests that the dependents named on the form traveled "with the intent of establishing a bona fide residence at destination." The intent that controls is the intent that existed at the time the travel was performed. The appellant's testimony that he expected his wife to return to him is supported by his wife's testimony that she still was considering returning. The girls performed the travel for which their father was reimbursed. Considering all the evidence, we cannot say that the court was justified in determining beyond a reasonable doubt that at the time his daughters traveled to Fort Leavenworth, Lieutenant Colonel Dale did not intend that they would establish a permanent residence with him there.

As to Mrs. Dale's travel, we reach a different result. Despite Lieutenant Colonel Dale's having had a reasonable basis for hoping she might rejoin him, the form he executed declared that she had performed the travel from Mineral Wells to Fort Leavenworth. This was not true. The court then had a basis for determining that the claim for her travel was fraudulent and that the appellant wrongfully obtained the money attributable to her travel with the intent to appropriate it permanently to his own use.

The findings of guilty as to specifications 1 and 2 of Charge III and the specification under Charge IV are affirmed except for the amount attributable to the travel of the daughters. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence.

Judges QUINN and DUNCAN concur.